HERNDON, J.
After a nonjury trial, appellant was found guilty of selling marijuana in violation of section 11531 of the Health and Safety Code as alleged in the two counts of the indictment. At the trial, he was represented by counsel. On this appeal from the judgment of conviction, he appears in propria persona and in his brief he advances the following contentions: (1) That the evidence was not sufficient to support the judgment; (2) that the legal representation afforded him by his attorney in the trial court was so inadequate and his said attorney was so incompetent or disinterested that appellant’s constitutional right to representation by counsel was not fulfilled; (3) that he was denied a fair trial in that questions propounded to him by the trial judge were improper and betrayed the judge’s prejudice against him..

Statement of Facts

In regard to the first count alleged in the indictment, the record discloses that on January 26, 1961, James T. Johnson, a member of the Los Angeles Police Department assigned to the Narcotic Detail, received a certain telephone number from one Robert Watford who told him to call the indicated number and ask to speak to “Rabbit.” On the next day at approximately 10:30 a. m., Officer Johnson dialed the number which Watford had given him. Upon receiving an answer, Johnson'said, “Rabbit, this is Williams. Did Bob call you back?” The man answering replied, “No, man, I got the stuff and he.never showed up;'. . .” Officer Johnson then said, “I called him but he' won’t be back until later on, so I’ll come over and take care of business.” The other party said, “All right.” ’ '
■ Officer Johnson immediately drove to 532 West 50th Street and knocked on the door of Apartment 308. Someone inside asked, “Who is it?” Johnson replied, “Williams.” Thereupon, appellant opened the door. As the officer walked in, he asked, “Did Bob show up yet?” Appellant answered “No” and then went into the kitchen. He returned shortly and *546 handed a paper hindle containing a green leafy substance to the officer who, in turn, gave appellant $6.50.
Immediately thereafter, the officer drove to the Police Administration Building where he marked the paper package, placed it in an envelope and sealed it with his right thumb print. The envelope was then transferred to the crime laboratory for chemical analysis.
Relating to the transaction involved in the second count of the indictment, it appears from the record that on February 2, 1961, at approximately 9:15 a. m., Officer Johnson dialed the telephone number previously indicated and asked to speak to “Rabbit.” Thereupon the party who had answered stated that he was “Rabbit.” Johnson inquired, “Can you do what you did for me the other day?” The other party replied, “Yes, but hurry up because I’m getting ready to go downtown. ’ ’
The officer then drove to the 50th Street address and knocked on the door of Apartment 308. After opening the door and admitting the officer, appellant went into the kitchen. He returned with a paper packet containing a green leafy substance which he handed to the officer. The officer gave a ten-dollar bill to appellant and received change in the amount of $3.50.
Immediately thereafter the officer drove to the Police Administration Building, marked the package, placed it in an envelope which he sealed and then booked the envelope at the property division. The witness, Robert Druley, a qualified chemist, examined each of the two packages and found that the substance contained therein was marijuana.
It also appears from the record that prior to the two transactions alleged in the indictment, Officer Johnson had been taken to the premises at 532 West 50th Street by Watford and had met appellant at that time. On that occasion, appellant said that he did not have any marijuana then but indicated that he would obtain some. Watford then gave the officer the telephone number to use in calling appellant.
In defense, appellant denied that he had ever sold marijuana to anyone. He further testified that he lived in the above referred to apartment but that he had never been known or referred to as “Rabbit” and that Officer Johnson had never been in his apartment when he was there. Appellant’s wife and a Mr. Kent, the manager of the apartment house, testified that, so far as they knew appellant had never been known as “Rabbit.”

*547
Conclusions

Our summary statement of the evidence as hereinabove set forth so clearly demonstrates its sufficiency to support the judgment of conviction that any further discussion or analysis would be superfluous and an imposition upon bench and bar,
(a) It is elementary, of course, that an appellate court will not disturb the judgment of the trial court on the ground of the lack of sufficient supporting evidence, unless it appears from the record that “upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below.” (People v. Newland, 15 Cal.2d 678, 681 [104 P.2d 778]; see also People v. Gould, 111 Cal.App.2d 1, 5 [243 P.2d 809]; People V. Carter, 192 Cal.App.2d 648, 658 [13 Cal.Rptr. 541].)
(b) The testimony of one witness is sufficient to support a judgment if such testimony is not inherently incredible. (People v. Newman, 102 Cal.App.2d 302, 306 [227 P.2d 470].) “ ‘[I]t is the exclusive province of the trial court to judge the credibility of the witnesses, to determine the probative force of testimony and to weigh the evidence, . . .’ ” (White v. Aetna Life Ins. Co., 198 Cal.App.2d 370, 375 [17 Cal.Rptr. 914].)
Appellant’s complete misconception of the law is indicated by the following statement in his brief: “Where the appellant’s testimony tends to countervail that of the officer, it is proof that a reasonable doubt exists, especially where the officer’s testimony is uncorroborated.” (See People v. Braun, 14 Cal.2d 1, 5 [92 P.2d 402].)
(2) Equally lacking in merit is appellant’s contention that the legal representation provided him by his attorney in the trial court was so inadequate that his constitutional right to representation by counsel was not fulfilled.
(a) If appellant believed that this counsel was not affording him adequate representation, it was incumbent upon him to complain to the trial judge in order to afford the court an opportunity to correct the situation. (See People v. Garrow, 130 Cal.App.2d 75,78 [278 P.2d 475]; People v. Youders, 96 Cal.App.2d 562, 569 [215 P.2d 743].) In the absence of complaint or objection in the trial court, asserted mistakes of defense counsel will not be entitled to consideration on appeal. (People v. Hartridge, 134 Cal.App.2d 659, 667 [286 P.2d 72].) Furthermore, in the absence of such objection, the acts of appellant’s counsel will be imputed to him, (People v. Jones, 177 Cal.App.2d 420, 422 [2 Cal.Rptr. *548 305]; People v. Wren, 140 Cal.App.2d 368, 370 [295 P.2d 54].)
(b) Appellant’s complaints concerning his attorney amount to an assertion that counsel used poor judgment. Poor judgment of defense counsel does not, in and of itself, amount •to a denial of representation. (People v. Logan, 137 Cal.App.2d 331, 335 [290 P.2d 11]; People v. Delasantos, 172 Cal.App.2d 213, 217 [342 P.2d 69].) A denial of representation is not established unless the record shows that counsel’s handling of the case was so incompetent that it was the duty of the court to observe and correct it. (See People v. Dupree, 156 Cal.App.2d 60, 69 [319 P.2d 39].)
(e) "We could not hold that appellant’s representation by counsel was so inadequate that it violated the due process clause of the' Fourteenth Amendment to the United States Constitution unless such representation was so inadequate as to render the trial a farce and a mockery of justice (Diggs v. Welch, 148 F.2d 667, 669 [80 App.D.C. 5]), or that the - integrity of the proceeding was destroyed by the incompetence of counsel. (United States ex rel. Weber v. Ragen (7 Cir. 1949) 176 F.2d 579, 586; see also People v. Dupree, supra, 156 Cal.App.2d 60, 69.) This is especially true when the counsel was of the appellant’s own choice. (See People v. Amado, 167 Cal.App.2d 345, 347 [334 P.2d 254]; People v. Wein, 50 Cal.2d 383, 410 [326 P.2d 457].)
Our reading of the reporter’s transcript reveals that appellant’s complaints with reference to his lawyer’s asserted lack"óf competence or interest are wholly unjust, unfounded and imaginary. The record indicates to us that during the trial, appellant’s attorney représented him earnestly, conscientiously and competently.
(3) We must reject appellant’s final contention that he was denied a fair trial in that questions propounded to him by the trial judge were improper and betrayed the judge’s prejudice against him.
(a) It is well-established that a trial judge may properly engage in reasonable examination of witnesses during the course of a trial. (People v. Docherty, 178 Cal.App.2d 33, 40 [2 Cal.Rptr. 722]; People v. Deacon, 117 Cal.App.2d 206, 209 [255 P.2d 98]; People v. Corrigan, 48 Cal.2d 551, 555 [310 P.2d 953].)
(b) Moreover, appellant’s contention is of no avail because of his failure to make any objection at the" time of trial. (People v. Docherty, supra, 178 Cal.App.2d 33, 40; *549 People v. Kuykendall, 134 Cal.App.2d 642, 651-652 [285 P.2d 996]; People v. Posada, 198 Cal.App.2d 535, 540 [17 Cal.Rptr. 858]; People v. Corrigan, supra, 48 Cal.2d 551, 556.)
The record reveals that all of the questions propounded to the appellant by the trial judge were proper and manifested an open-minded search for the truth. No objection was interposed to any of these questions. The judge’s remarks clearly indicate that he maintained an attitude of open mind"edness until after he had heard all of the evidence and the arguments of counsel and until the case was regularly submitted to him for decision.
. The judgment of conviction is affirmed.
Fox, P. J., and Ashburn, J., concurred.