[Civ. No. 6810.   Fourth Dist.   Aug. 6, 1962.]

GARDEN GROVE UNION HIGH SCHOOL DISTRICT OF ORANGE COUNTY, Plaintiff and Respondent, v. GEORGE P. MEIER et al., Defendants and Respondents; JOHN T. HINTZ et al., Defendants and Appellants.

Sylvan Y. Allen for Defendants and Appellants.

Stephen K. Tamura, County Counsel, and Angelo J. Palmieri, Deputy County Counsel, for Plaintiff and Respondent.

Robert B. Webb, H. A. Paskett, Jacobs, Jacobs, Nelson & Witmer and M. Lyle Nelson for Defendants and Respondents.

STONE, J.*—This action was commenced by plaintiff-respondent Garden Grove Union High School District of Orange County to condemn certain real property. The heart of the appeal, however, concerns the question of where title lies as between the record owners of the parcels of real property condemned, who are defendants-respondents herein, and defendant-appellant Hintz, who claims equitable title. Hintz controlled several corporations through which he developed subdivision tracts. He and his corporations claimed equitable title by reason of contracts to purchase the six parcels of condemned property with which we are concerned. Plaintiff School District appears as a respondent for the reason that it has paid out, pursuant to the judgment of condemnation, the monies awarded to each of the respondent owners.

The negotiations between appellants and respondent owners culminated in a separate escrow agreement between Hintz and each owner. The escrow agreements were contingent upon Hintz' approval of the preliminary title report and of an engineering report. Provision was made for completion of each escrow by a specified date, and time was expressly declared to be of the essence. The time for closing three of the six escrows had expired when appellants deposited a check for the total purchase price of all six parcels with the escrow company. Los Angeles Trust Deed and Mortgage Exchange deposited the money on behalf of Hintz, but in doing so attached several conditions to payment of the funds which were not contained in the terms of the escrow agreements. The situation was further complicated by plaintiff School District's filing a condemnation action against all six parcels prior to the completion of any of the escrows.

The foregoing summary is general, and the facts as to each parcel differ somewhat in detail because appellant Hintz and the real estate agents who represented him conducted separate negotiations with each respondent owner. For reasons that appear later in this opinion, we find it unnecessary to relate additional facts.

Appellant Hintz filed an answer in the condemnation action claiming equitable title to each of the six parcels, while each respondent owner answered alleging title to his respective parcel. Pursuant to a pretrial conference order, the question of title to the property as between appellant Hintz and respondent owners was tried prior to the condemnation action

---

*Assigned by Chairman of Judicial Council.

proper. After trial of the title issues, the court entered the following minute order:

"This case having been taken under submission April 12, 1960 the Court now rules: Court finds that the defendants John T. Hintz, Hintz Development Corporation, Emoline Homes, Inc., Yoline Homes, Inc., Romark Homes Inc., Lill-an Homes, Inc., and Minster Homes, Inc., have no interest in the property owned by following defendants:

George P. Meier and Lydia L. Meier parcel 1.
George A. Krause and Leona J. Krause parcel 2.
Julian Wagner and Peggy Wagner parcel 3.

. . . . . . . . . . . .
Fred M. Flaugh and Rhoda Ruth Flaugh parcel 8.
. . . . . . . . . . . .

and that each of the above named defendants own all parcels described free and clear of any claim of various Hintz defendants named above. Case set for trial as to value of these parcels, May 2, 1960 at 9:15 A.M. in Department V."

Upon completion of the condemnation aspect of the trial, counsel for plaintiff School District stipulated with counsel for the property owners, with one exception, to waive findings of fact and conclusions of law. The finding of fact as to ownership filed by the one respondent states merely: "The Court further finds that the property sought to be condemned and described as Parcel No. 1, as amended, is owned by Defendants George P. Meier and Lydia L. Meier." Although this finding may be sufficient as a general finding of ownership, it does not dispose of the issues raised by the pleadings and the pretrial conference order, which we shall discuss presently. The net result is that there are no findings of fact on the issues of equitable title. Further, counsel neglected to get a stipulation waiving findings from counsel for Hintz. The court entered judgment in the condemnation action without findings.

The issues raised by the claim to equitable title by appellant Hintz are clearly spelled out in the pretrial conference order. It reads in part as follows:

"Action in Eminent Domain.

"In addition to the issue of value of the respective parcels concerned, it appears that as to most of the parcels, sometime prior to the filing of the action, the parties had entered into an escrow to sell their respective parcels or portions thereof to the Hintz' interests (hereinafter referred to as Hintz). It appears that while these escrows were in progress, the condemnation action was started. Thereafter, none of the escrows

were completed. Hintz now takes the position that he was the 'owner' of the respective parcels subject to his obligation to pay certain monies as provided in the escrow agreement. The record owners who had sold to Hintz take the position that the escrows were not completed, that Hintz acquired no title and that he has no interest in the parcels. All of the owners admit his execution of an escrow agreement for sale of their property to Hintz. In some instances, the time for performance under the escrow agreement had expired before the condemnation action; in others condemnation action was started before the time for conclusion of the escrow had passed. Some of the owners served formal notice of rescission or termination of the escrow, others did not.

"There appears to be some question as to the pleadings and proof necessary to establish the Hintz claim. However, counsel have produced authority for the proposition that a claim of equitable ownership will be asserted in a condemnation action. Hence, as regards to Hintz, the issue will be: Does Hintz, by virtue of the respective escrow agreements have an equitable ownership in the respective parcels that were under contract. On this issue Hintz will have the burden of proving his ownership under the applicable law.

"Each of the owners and the plaintiff will be entitled to assert any defense which tends to defeat his claim of equitable ownership.

"It appears that this issue of equitable ownership must be tried and deemed [sic] before the case can proceed on the issue of value.

"It is agreed that in the case of each escrow there are different evidentiary factors that will be involved. Counsel are of the opinion that the determination of the equitable interest of Hintz, as reflects each parcel, will take approximately one day to try."

The failure of the court to make findings on the issues thus presented is seized upon by appellants as reversible error. A review of the record reveals that a number of interesting questions are raised. For example, as to each parcel it must be determined: (1) Whether the escrow established an agreement to sell or simply an option to buy; (2) if the escrow established an agreement of sale, did the escrow vest equitable title in appellants; (3) was time of the essence; (4) if time was of the essence, was there a waiver of the time requirement by the sellers; (5) if there was no waiver and a failure to perform within the time specified, did this *ipso facto* divest appellants

of equitable title, or was each seller required to rescind to divest the equitable title; (6) if a rescission was required, was there a rescission by the owner of each parcel; (7) did commencement of a condemnation action relieve appellants from further performance of the escrow and leave them vested with an equitable title which they could assert in the condemnation proceeding?

We cannot attempt to discuss these and the other legal questions which were raised, until the facts are settled by findings. ▮▮ Respondents remind us of article VI, section 4¾ of the California Constitution, the act which enabled appellate courts to make findings, and of Code of Civil Procedure section 956a, implementing the amendment. Section 956a provides, in part, that "In all cases where trial by jury is not a matter of right or where trial by jury has been waived, the Supreme Court or a district court of appeal may make findings óf fact contrary to, or in addition to, those made by the trial court."

To ask this court to make findings from nearly 400 pages of transcript and 77 exhibits, is to misconstrue the purpose of Code of Civil Procedure 956a. The section was never intended as a means of employing an appellate court to completely retry a case, using the superior court record. Certainly where justice requires, an appellate court can, and should, make necessary additional findings. But in a case where no findings are made at all, the appellate court should not substitute for the trial court in weighing the evidence and in fact finding. Particularly is this so in a case such as the one at bar involving several questions of fact and a voluminous record.

▮ Since the question of value as to each parcel has been settled and there is no controversy regarding that aspect of the case, and no appeal on these issues is pending, we see no point in reversing and sending the action back for a retrial. Nor do we perceive any reason why the trial judge who heard the evidence should not make the findings of fact on the issues of title.

The judgment is reversed with directions to the trial court to make findings of fact and conclusions of law on the issues of title as raised by the pleadings and the pretrial conference order, and then to enter an appropriate judgment in accordance with such findings and determination.

Griffin, P. J., and Shepard, J., concurred.